# IN THE COURT OF APPEALS OF IOWA

No. 19-1038
Filed April 29, 2020

**CHAD MILLER,**
    Plaintiff-Appellant,

**vs.**

**SCOTT COUNTY BOARD OF REVIEW,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Mark R. Fowler, Judge.

A property owner appeals the district court order deciding the assessed value of his property and affirming the county board of review's classification of his property as residential rather than agricultural. **AFFIRMED**.

Stephen P. Wing of Dwyer & Wing, P.C., Davenport, for appellant.

Robert L. Cusack, Assistant County Attorney, Davenport, for appellee.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**TABOR, Presiding Judge.**

Chad Miller appeals a district court order affirming the Scott County Board of Review's classification of his Bettendorf property as residential. Miller also challenges the valuation. He contends he primarily uses the property for agricultural purposes and its assessed value should be $700,000 rather than $800,000. Because substantial evidence supports the district court valuation and classification of the real estate, we affirm.

## I. Facts and Prior Proceedings

In 2008, Miller bought 10.2 acres in Scott County. Our court described this acreage when deciding Miller's appeal from the 2015 property tax assessment:

> About two acres of the property is considered the homestead and contains improvements, including a two-story house with a porch, deck, patio, and garage. About five acres is a slough, with streams and forest. Miller has 3.6 acres of cropland. The cropland is in a 100-year flood plain. In 2009 to 2011, he grew hay. In 2012 and 2013, he grew corn. He did not have any crops in 2014 due to weather conditions. In 2015, he had corn and pumpkins.

*Miller v. Prop. Assessment App. Bd.*, No. 18-0929, 2019 WL 3714977, at *1 (Iowa Ct. App. Aug. 7, 2019). This same property is at issue in Miller's challenge to the 2017 tax assessment here. Miller testified he continued to grow corn and pumpkins on the tillable land.

In February 2017, the Scott County Assessor sent Miller a notice that his residential real estate in Bettendorf was valued at $985,108 for property tax purposes. Miller petitioned the county board of review, claiming the assessment was inequitable. He also argued the land was misclassified as residential rather than agricultural. The board denied his petition. Miller appealed that denial to the

district court. *See* Iowa Code § 441.38 (2017) (allowing taxpayer protesting assessment to appeal directly from board of review to district court).

At a January 2019 hearing, both Miller and Scott County called real estate appraisers to testify. In addition, the Scott County Assessor, Tom McManus, took the stand. McManus agreed Miller's property had "multiple uses" but insisted the farming operation was "a secondary use." On the valuation issue, McManus agreed a downward adjustment to $825,000 was appropriate. The assessor also conceded the "slough bill" exemption of $27,900 should be granted Miller for the 2017 tax year.[1] Following the hearing, the district court upheld the county's designation of the property as residential, finding Miller was "a hobby farmer." The court then found Miller's taxes should be based on the valuation of $800,000. Miller now appeals the court's order.

## II. Scope of Review

We review tax protests de novo. *Compiano v. Bd. of Review of Polk Cty.*, 771 N.W.2d 392, 395 (Iowa 2009). We give weight to the district court's fact-findings, especially with regard to witness credibility, but are not bound by them. *Soifer v. Floyd Cty. Bd. of Review*, 759 N.W.2d 775, 782 (Iowa 2009).

## III. Analysis

### A. Classification

Property owners may challenge their tax assessments on the ground the property has been misclassified. Iowa Code § 441.37(1)(a)(1)(c). For assessment purposes, a property's classification "is to be decided on the basis of its primary

---

[1] The "slough bill" allows counties to implement a property tax abatement for prairies and wetlands. *See* Iowa Code § 427.1 (23).

use." *Sevde v. Bd. of Review*, 434 N.W.2d 878, 880 (Iowa 1989). Miller argues the district court wrongly decided that he failed to show agriculture was the primary use of his real estate. He also contends he overcame the statutory presumption as to continuity of use.

We start with the language of that continuity-of-use presumption:

> If the classification of a property has been previously adjudicated by the property assessment appeal board or a court as part of an appeal under this chapter, there is a presumption that the classification of the property has not changed for each of the four subsequent assessment years, unless a subsequent such adjudication of the classification of the property has occurred, and the burden of demonstrating a change in use shall be upon the person asserting a change to the property's classification.

Iowa Code § 441.21(3)(b)(3).

Miller concedes the 2013 and 2015 assessments classified his property as residential. So he must prove by a preponderance of the evidence the primary use of his property is for agricultural purposes. The touchpoint for Miller's proof is in this definition from the administrative code:

> Agricultural real estate shall include all tracts of land and the improvements and structures located on them which are in good faith used primarily for agricultural purposes except buildings which are primarily used or intended for human habitation . . . . Land and the nonresidential improvements and structures located on it shall be considered to be used primarily for agricultural purposes if its principal use is devoted to the raising and harvesting of crops or forest or fruit trees, the rearing, feeding, and management of livestock, or horticulture, all for intended profit. Agricultural real estate shall also include woodland, wasteland, and pastureland, but only if that land is held or operated in conjunction with agricultural real estate . . . .

Iowa Admin. Code r. 701-71.1(3)(a).

Setting aside the 4.9 acres of slough land, we look to whether Miller "in good faith" uses his remaining 5.3 acres primarily for agricultural purposes. Of that

parcel, another 1.7 acres accommodates his residence, leaving 3.6 acres for farming. The county assessor had to determine whether the principal use of Miller's land was "devoted to the raising and harvesting of crops or forest or fruit trees, the rearing, feeding, and management of livestock, or horticulture, all for intended profit." *See id.* r. 701-71.1(1) (allowing only one classification per property and directing determination to be "based upon the best judgment of the assessor" following the guidelines). In his testimony, McManus conceded some agricultural use of the property but characterized it as a "start-up" or "hobby farm."

In addition to actual use, the county assessor's determination if real estate is primarily agricultural may be guided by these five questions:

> (1) is the parcel set off and awaiting development; (2) what permitted uses does current zoning allow; (3) if the parcel is being offered for sale, or if it were, would it be viewed by the marketplace as other than agricultural; (4) how does the land conform to other surrounding properties; (5) what is the actual amount of income produced and from what sources; and (6) what is the highest and best use of the property.

*Colvin v. Story Cty. Bd. of Review*, 653 N.W.2d 345, 350 (Iowa 2002).

We can add little to the district court's insightful analysis of those questions:

> The property has never provided a profit from the agricultural portion of the property and if the property was for sale it would be sold as a residential property not an agricultural property. When the Millers bought the property it was as a residential property. Though the property is slightly over ten acres it is being surrounded by property being developed for residential property. The best use of the property is for residential purposes. The biggest asset of the property is not the farmland but is the residence. Mr. Miller is a hobby farmer, and the determination by the [the board of review] that the property is primarily a residential property is supported by the evidence.

Still, on appeal, Miller points to "the manner in which his farming activities on the 3.6 acres has changed and continue to change in order to improve

productivity." To that end, he sought mentoring from other Scott County farmers on growing crops and built a barn to store his future yields "in the hope that they can be sold when prices rise." But as Scott County contends, "construction of an outbuilding and learning about fertilizer and soil conditions do not change the primary use of the property."

Miller also argues in past decisions adverse to his tax protests, the property assessment appeal board, the district court, and the court of appeals have all unfairly assumed the term "intended profit" in the administrative code definition correlates with the "bottom line on his Schedule F" for federal income tax purposes.

It may be fair to say "the property owner's agricultural operation does not actually have to be profitable, but there has to be a genuine intent to make a profit." *See Polk Cty. Bd. of Review v. Prop. Assessment App. Bd.*, No. 09-1542, 2010 WL 3155273, at *6 (Iowa Ct. App. Aug. 11, 2010) (Mansfield, J., dissenting).

Even applying that standard, Miller failed to show genuine intent to turn a profit on the farming operation. On direct examination, he testified the profit he realized through his farming operation came predominantly from tax savings. When cross examined about his good faith intent to profit from his farming operation, he was evasive. He testified that despite his outlay of $90,000 in equipment and $55,000 for his barn, he clears at best $1200 per year from his crop of corn and pumpkins. In our de novo review, we cannot find Miller overcame the presumption that the proper classification of his property was residential and not agricultural.

**B.** **Valuation**

Miller next challenges the district court's valuation of his property at $800,000. Underlying this challenge, Miller insists the district court failed to recognize he shifted the burden of proof under Iowa Code section 441.21(3)(b)(1). That section provides:

> For assessment years beginning before January 1, 2018, the burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, inequitable, or capricious. However, in protest or appeal proceedings when the complainant offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed.

Scott County concedes Miller offered competent evidence from two disinterested witnesses that the assessed value of $985,180 was excessive. Miller called appraiser Justin Schroeder as a witness. Schroeder reported the fair market value of Miller's property was $700,000. Miller also offered into evidence an appraisal by Joel Hansen, who set the fair market value at $750,000. The county called appraiser Martin Corey, who valued Miller's property at $825,000. Miller asks us to fix the value in line with Schroeder's appraisal. By contrast, Scott County believes the district court was right to embrace Corey's appraisal.

We start with the burden question. Although the district court may have overlooked the shift required by section 441.21(3)(b), we recognize the burden of proof rested with Scott County, "and in our de novo review, that is where we place it." *See Ross v. Bd. of Review of City of Iowa City*, 417 N.W.2d 462, 465 (Iowa 1988).

We move next to the accuracy of the court's valuation. For taxation, property is assessed at its "actual value," meaning "the fair and reasonable market value." Iowa Code § 441.21(1)(a), (b). To arrive at market value, we take into consideration the sale prices of comparable property. *Id.* § 441.20(1)(b)(1).

Here, Miller quibbles with the comparable properties that Corey selected. Miller contends they did not reflect the most recent sales data. But Corey testified he looked for houses that were "the most similar age and most similar size." The district court found Corey's testimony to be "very credible" and "his reasoning compelling." We give weight to that credibility finding. *See Soifer*, 759 N.W.2d at 783 (leaving question whether other properties are sufficiently similar to the trial court's discretion). As the district court also noted, comparable properties listed in Hansen's appraisal were also in line with the $800,000 assessment.

Having reviewed the record in full, we find Scott County sustained its burden to prove the valuation adopted by the district court.[2]

**AFFIRMED.**

---

[2] Even if not specifically discussed, we have considered all of Miller's contentions and find they do not affect our resolution.